STATE of Iowa, Appellee,

v.

David Webster GATES, Appellant.

No. 64010.

Supreme Court of Iowa.

June 17, 1981.

As Corrected June 30, 1981.

W. H. Gilliam, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., Thomas N. Martin, Asst. Atty. Gen., David H. Correll, Black Hawk County Atty., and Larry L. Anfinson, Asst. Black Hawk County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE and SCHULTZ, JJ.

ALLBEE, Justice.

Defendant David Webster Gates appeals his conviction of theft in the second degree. He raises two questions: (1) whether trial court erred in instructing the jury with respect to the presumption of misappropriation created by subsection 714.1(2), Supplement to the Code 1977; and (2) whether he was effectively denied an opportunity for pretrial discovery. We consider each of these issues in turn, and affirm trial court.

I. *The instruction.*

Defendant was charged by trial information with theft in the second degree, in violation of sections 714.1(2) and 714.2(2), Supplement to the Code 1977. The charges stemmed from defendant's failure to return by the date required in his lease two U-Haul trailers rented in Waterloo. One of the trailers was located in defendant's possession in Colorado nearly a month later; the other was retrieved in Stuart, Iowa. Thus, neither trailer was returned within seventy-two hours after the time specified for return in the rental agreement.

The gravamen of defendant's assertion of error concerns instruction twelve, which was predicated on subsection 714.1(2). The latter provides in pertinent part:

A person commits theft when the person does any of the following:

. . . .

2. Misappropriates property which the person has in trust, or property of another which the person has in his or her possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to his or her own use, when the owner of such property is known to him or her. *Failure by a bailee or lessee of personal property to*

*return the property within seventy-two hours after a time specified in a written agreement of lease or bailment shall be evidence of misappropriation.*

(Emphasis added.)

 Instruction twelve informed the jury as follows:

The law provides that failure by a bailee or lessee of personal property to return the property within seventy-two (72) hours after a time specified in a written agreement of lease or bailment shall be evidence of misappropriation.

The failure to return the property is not conclusive evidence, but it may be considered by you in connection with all other evidence in determining whether the State has proved beyond a reasonable doubt the defendant is guilty of Theft.

In essence, defendant contends subsection 714.1(2), as implemented by this instruction, creates a mandatory presumption which impermissibly shifted to defendant the burden of persuasion on this element of the crime

charged, thus violating the due process clauses of the United States and Iowa constitutions.[1]

 We note initially that neither party has addressed the question of defendant's standing to assert this constitutional challenge. Although not raised by the litigants, this issue is nonethelesss present, as it inheres in every case in which the constitutionality of a statute is attacked. *See State v. Price,* 237 N.W.2d 813, 816 (Iowa), *appeal dismissed,* 426 U.S. 916, 96 S.Ct. 2619, 49 L.Ed.2d 370 (1976). Ordinarily, where there is no constitutional defect in the application of a statute to a litigant, he has no standing to contend that it may conceivably be applied unconstitutionally to others in hypothetical situations. *County Court of Ulster County v. Allen,* 442 U.S. 140, 154–55, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777, 790 (1979); *Price,* 237 N.W.2d at 816. Because defendant challenges the constitutionality of subsection 714.1(2) only as ap-

---

1. While defendant also appears to challenge the validity of two additional instructions given by trial court, they were afforded scant attention in his brief and argument. Those instructions stated as follows:

INSTRUCTION NO. 9

One of the essential elements which the State is required to prove beyond a reasonable doubt is that the defendant "misappropriated property." To "misappropriate" means that a person, knowing he had no right or authority to do so, exercises control over the property or aids a third person in exercising control, and that by exercising control over the property, the benefit or value of the property is lost to the owner. Misappropriation may also occur when a person knowingly disposes of the property for his own benefit or the benefit of a third person.

The terms "knowingly" or "know", refer to knowledge. The knowledge which the person possesses at any given time is a state of mind seldom capable of direct or positive proof. It must ordinarily be determined from the words and conduct of the person and the just and reasonable inferences which may be drawn in accordance with common experience and observation. Knowledge may be proved by direct or circumstantial evidence.

*In determining the knowledge of a person, you have a right to infer that he knew the natural and probable consequences of his voluntary act which ordinarily follows such acts.*

INSTRUCTION NO. 10

One of the essential elements of the crime charged in this case is the specific intent to commit a theft. Such specific intent must exist in the mind of the person charged with such offense at the actual time of the misappropriating.

Where intent is an essential element of the offense charged, it must be proved beyond a reasonable doubt. Intent is a mental state, emotion, or condition of the mind with a design, resolve or determination that the doing of an act shall be with a certain purpose. As such, intent is seldom, if ever, capable of direct and positive proof. Rather, the intent, if any, may be arrived at by such reasonable inferences and deductions as may be drawn from the facts proved by the evidence, in accordance with common experience and observation.

*In determining the intent of any person you have a right to infer that he intended the natural and probable consequences which ordinarily follow his acts.*

(Emphasis added.) In relevant part, these instructions are virtually identical to the instructions approved in *State v. Rinehart,* 283 N.W.2d 319, 320–23 (Iowa 1979), *cert. denied,* 444 U.S. 1088, 100 S.Ct. 1049, 62 L.Ed.2d 775 (1980). Their use is equally valid in the case at bar.

plied to him, and because the statute impacts adversely on his rights, defendant has the requisite standing in this case. *See id.; State v. Pierce,* 287 N.W.2d 570, 573 (Iowa 1980).

■ Much has been written recently concerning the use of presumptions in criminal trials. *E.g., Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777; *State v. Rinehart,* 283 N.W.2d 319 (Iowa 1979), *cert. denied,* 444 U.S. 1088, 100 S.Ct. 1049, 62 L.Ed.2d 775 (1980). The validity of these evidentiary devices is dependent upon the satisfaction of a two-test inquiry. At the threshold, the characterization of the presumption must be determined. *See Sandstrom,* 442 U.S. at 514, 99 S.Ct. 2454, 61 L.Ed.2d at 45; *Rinehart,* 283 N.W.2d at 322; *State v. Hansen,* 203 N.W.2d 216, 218 (Iowa 1972). The focus then centers upon the rationality of the relationship between the elemental fact to be presumed and the fact proved. *Allen,* 442 U.S. at 165, 99 S.Ct. at 2228, 60 L.Ed.2d at 797; *Rinehart,* 283 N.W.2d at 323; *Hansen,* 203 N.W.2d at 218.

Our first inquiry concerns the nature of the evidentiary device, authorized by subsection 714.1(2), as employed in the instruction given by trial court. *Rinehart,* 283 N.W.2d at 322. This entails a determination of whether the device acts as a mandatory or permissive presumption. Because a mandatory presumption requires the jury to find the presumed fact upon proof of the basic fact, at least where the defendant has not adduced some evidence to rebut the presumed connection between the two facts, it "may affect not only the strength of the 'no reasonable doubt' burden but also the placement of the burden." *Id.* (quoting *Allen,* 442 U.S. at 157, 99 S.Ct. at 2224, 60 L.Ed.2d at 792). As such, it may run afoul of constitutional guarantees. A permissive presumption, on the other hand, "leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof." It therefore "affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case,

there is no rational way the trier could make the connection permitted by the inference." *Id.* at 321.

■ In characterizing the presumption utilized in the instant case, our focus is upon the wording and context of the instructions as presented to the jury. *Id.* at 322. Reading the instructions as a whole, *see Hansen,* 203 N.W.2d at 222, we are convinced the jury was fully apprised of its option to reject the application of the challenged presumption.

The challenged instruction itself clearly indicated the jury was not required to find the presumed fact upon proof of the basic fact. As noted previously, after reciting the language of section 714.1(2), the instruction stated: "The failure to return the property *is not conclusive evidence,* but it may be considered by you *in connection with all other evidence in determining whether the State has proved beyond a reasonable doubt* the Defendant is guilty of Theft." This instruction clearly informed the jury it was not bound to find the presumed fact.

Examination of the remaining instructions leads inescapably to the same conclusion. The jury was instructed seven times, including in the challenged instruction, that the State had the burden to prove defendant guilty beyond a reasonable doubt. Moreover, the jury was instructed that it was the sole judge "of the weight of the evidence, the credibility of the witnesses, and the conclusions to be drawn from the facts and circumstances proved." Additionally, an instruction on the presumption of defendant's innocence was given. Also of significance, the instructions in no way stated or implied that any elemental fact presumed from the proved facts would stand as established absent the introduction of rebuttal evidence by defendant. *Rinehart,* 283 N.W.2d at 322. Thus, no shifting of the "reasonable doubt" standard resulted. We believe the instructions here, when read as a whole, clearly apprised the jury of the permissive nature of the misappropriation presumption.

The second prong of our analysis concerns the rationality of the relationship between the basic facts proved by the State and the ultimate fact to be presumed. *Allen*, 442 U.S. at 165, 99 S.Ct. at 2228, 60 L.Ed.2d at 797; *Rinehart*, 283 N.W.2d at 323. Due process requires that a "rational connection" exist between the basic and presumed facts, and that it is more likely than not that the latter flow from the former. *Id.* This inquiry is judged by history, common sense and experience. *Rinehart*, 283 N.W.2d at 323. We believe the statute and instructions challenged here possess the requisite rationality. Both provide that a bailee's or lessee's failure to return personal property within seventy-two hours after a time specified in a written lease agreement "shall be evidence" of misappropriation. This inference is certainly supported by common sense and experience. As such, it is clearly rational.

The presumption created by section 714.-1(2), as applied in the instant case, comports with due process. We find no error here.

## II. *The discovery issue.*

In his second assignment of error, defendant asserts trial court denied him the opportunity for pretrial discovery of certain of the State's witnesses. Following filing of the trial information, defendant, pursuant to local court rule, requested an order permitting defendant to depose an unnamed officer of U-Haul International, Inc., in Phoenix, Arizona, at state expense. This motion, resisted by the State, was denied; the major premise for this ruling consisted of defendant's failure to utilize other, less expensive discovery tools available. Following the addition of certain out-of-state witnesses to the State's minutes of testimony, defendant filed a motion seeking the production of those persons some days in advance of trial so that they might be deposed to enable the development of a defense. Trial court again denied defendant's motion. Instead, the court scheduled the depositions of these witnesses for the afternoon following the selection of the jury, rather than transport them to Waterloo in

advance of trial and again for the trial itself. Defendant contends this restriction on the taking of depositions constituted error; his argument is apparently based upon the assertion that the right of an accused to depose state witnesses is without limitation. We do not agree.

Iowa R.Crim.P. 12, which provides for depositions in criminal cases, states in part: "A defendant in a criminal case, may examine all witnesses listed by the State on the indictment or information or notice of additional witnesses, conditionally or on notice or commission, in the same manner and with like effect and with the same limitations as in civil actions except as otherwise provided by statute and these rules . . . ." Discovery matters are committed to the sound discretion of the trial court, and are reviewable only upon an abuse of that discretion. *E.g., Pollock v. Deere & Co.*, 282 N.W.2d 735, 738 (Iowa 1979); *see State v. Eads*, 166 N.W.2d 766 (Iowa 1969); *accord, United States v. Adcock*, 558 F.2d 397, 406 (8th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); *United States v. Crow Dog*, 532 F.2d 1182, 1189 (8th Cir. 1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977). Error in the administration of discovery rules is not reversible absent a demonstration that the substantial rights of the defendant were prejudiced. *Crow Dog*, 532 F.2d at 1189. This discretion vested in trial courts necessarily includes supervision of the exercise of discovery. Thus, although criminal defendants possess the right to depose witnesses to be called on behalf of the State, this right is subject to reasonable regulation.

Under the circumstances presented in this case, we believe trial court acted within its discretion in prescribing the timing of the depositions of the out-of-state witnesses with a view to controlling the cost to the state. Persuasive to this conclusion is the fact that defendant makes no specific contention as to any prejudice which resulted from this restriction, nor is any prejudice apparent from the record. Consequently, we find no abuse of trial

court's discretion. We add this caution, however: In exercising their supervisory authority, trial courts must strike a careful balance between the interest in economizing discovery and the rights afforded criminal defendants.

We find that defendant has failed to demonstrate any basis for the reversal of his conviction. Accordingly, this case is affirmed.

AFFIRMED.

All justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

I concur in division II and the result.

I do not believe section 714.1(2) establishes a presumption. It does not contain "presumptive evidence" language like section 321.281 which was involved in *State v. Hansen*, 203 N.W.2d 216 (Iowa 1972). I would interpret the provision as merely a legislative determination that the specified evidence has probative value on the issue of misappropriation. It establishes the *relevancy* of the evidence rather than its *sufficiency*. Because the trial court correctly instructed the jury on the provision, I agree with the result in division I.